440 A.2d 1185
**COMMONWEALTH of Pennsylvania,**

v.

**William DAVIS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 28, 1981.

Decided Dec. 30, 1981.

Reargument Denied Feb. 16; 1982.

336

John W. Packel, Chief, Appeals Div., Elaine DeMasse, Asst. Public Defenders, for appellant.

Robert B. Lawler, Chief, Appeals Div., Gaele McLaughlin, Barthold, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

NIX, Justice.

Appellant, William Davis, was indicted as of June Sessions, 1975 for simple and aggravated assault, and possessing instruments of crime. He was tried and convicted of all charges. Post-verdict motions were filed and following their denial on July 1, 1976, the appellant was sentenced to concurrent and consecutive prison sentences totalling seven and one-half (7½) to fifteen (15) years. Thereafter, appel-

lant filed a direct appeal to the Superior Court which affirmed, without dissent, the judgments of sentence on October 20, 1978. A timely petition for the allowance of appeal was filed with this Court and was granted.

The essence of appellant's claim for relief is that the trial judge's conduct exceeded the bounds of propriety, and failed to maintain impartiality, thus depriving him of his right to a fair trial. To support this proposition, he cites a number of objections such as the court's refusal to permit defense counsel to make motions out of the hearing of the jury or to make argument on motions; that the court unnecessarily suggested possible motives for the crime in his charge to the jury; that the court misstated the evidence in a manner favorable to the prosecution and highly prejudicial to the defense; that the court impeded cross examination by the defense by repeatedly interrupting at critical points; that the court's manner toward the appellant, his counsel and his witnesses was sarcastic and reflected his (the court's) disbelief of the defense's evidence. We need not consider all of these allegations since one of the cited complaints is sufficient in itself to support the relief appellant now seeks.

During the course of the trial, counsel for the defense was adjudicated in contempt by the trial judge. A part of this episode occurred in the presence of the jury. For the reasons that follow, we are of the view that the prejudicial effect of this evidence was such that appellant was indeed denied a fair trial.

The incident occurred during the defense's cross examination of the victim, Mr. Mack Robinson. From the record it appears that the trial judge on at least three separate occasions interrupted the examination of the witness and interposed questions which were of a nature to rehabilitate that witness. Just prior to the incident in question, defense counsel had attempted to establish that the District Attorney aided the witness in preparation for his testimony, thereby attempting to cast doubt on the witness's testimony.

Q. How long were you with the District Attorney?

A. Quite awhile. A good while. A pretty good while.

Q. Pardon me?

A. A pretty good while.

Q. A pretty good while?

A. Yeah.

Q. Did the District Attorney ask you anything about whether or not anything was taken from you or had been attempted had to be taken from you?

A. I don't recall. I don't know if he did or not.

Q. You don't recall that?

A. No.

Q. What did the District Attorney tell you?

A. Huh.

Q. What did the District Attorney tell you?

\* \* \* \* \* \*

A. I don't know.

Q. You don't remember, from this morning, what it was that the District Attorney told you?

A. No.

Q. You don't recall anything at all he said to you?

A. I can't say. I don't know. I don't recall, to tell you the truth.

Q. Are you saying to this jury that you can remember something said 6 months ago, are you?

\* \* \* \* \* \*

A. No.

Q. In regard to something being said 6 months ago—

THE COURT: Excuse me.

## EXAMINATION

BY THE COURT:

Q. Mr. Robinson, do you understand what you're being asked?

A. Yeah.

Q. You're being asked if you talked to this man here, the District Attorney, this morning. Did you talk to him?

A. Yeah.

Q. When you talked to him he said something to you, you said something to him, is that right? Whatever it was you talked about, you talked about together, did you not?

A. Yeah.

Q. What did he say to you about this case?

A. He just told me when I come into the courtroom to tell the truth, and that was all.

Q. Did he tell you anything else?

A. No, not nothing else.

## CROSS–EXAMINATION

BY MR. SAGEL (Defense counsel):

Q. That would have taken you a second or to, for him to tell you that. You said you were talking to him a long while, is that right?

A. I was in his office a long while. We didn't do no talking though.

Q. Who did the talking, you or the District Attorney? Who was the talkative one?

A. He was talking to me. I didn't do much talking.

## EXAMINATION

BY THE COURT:

Q. What was he talking to you about?

A. He wasn't talking about too much. Just about my case, that is all. About my case, like when I get on the stand for me to tell what I know about the case. What happened to me. That's what I'm doing.

Q. That's what your [sic] doing now?

A. Yes.

Q. Did he tell you to say anything that you are not saying now?

A. No.

Q. Did he tell you to say anything that was not part of your case?

MR. SAGEL: Judge, may I interrupt and—

THE COURT: Never interrupt the court. Sit down.

MR. SAGEL: I respectfully—

THE COURT: Sit down.

MR. SAGEL: I respectfully object, Sir.

THE COURT: I said to you to sit down.

MR. SAGEL: I must object—

THE COURT: Sheriff, take him into custody. We'll stand in recess, members of the jury.

(Recessed at 3:15 P.M.)[1]

After the jury returned to the courtroom, appellant's counsel requested and was granted a sidebar conference

1. The following occurred out of the presence of the jury:

THE COURT: Sir, you're in contempt of court. The fine is one hundred dollars.

MR. SAGEL: May I be heard?

THE COURT: No, Sir. You have until tomorrow to pay that fine.

MR. SAGEL: May I make a statement Sir?

THE COURT: No.

MR. SAGEL: May I make a motion?

THE COURT: Do you move for a mistrial?

MR. SAGEL: Yes.

THE COURT: Denied. Anything else?

MR. SAGEL: Your Honor, I don't believe I was contemptuous.

THE COURT: Sir, you interrupted this court during its effort to postulate the evidence. You were told five times to sit down. You did not. You persisted not withstanding a direction of the court.

MR. SAGEL: It is my understanding—

THE COURT: I am not interested in your understanding, Sir. You're here as an officer of the court. Your function is to obey the court. You acted in contempt by not obeying the court. You have until tomorrow morning to pay your fine.

MR. SAGEL: I apologize, if your Honor wishes, in view of your opinion that—

THE COURT: I am not interested in your apologizing, because of my opinion. If you wish to say so of your own motion, saying you're in contempt, then you may apologize for that.

MR. SAGEL: If, in Your Honor's opinion—

THE COURT: You heard my opinion. You're in contempt.

MR. SAGEL: It was not my intention to be in contempt.

THE COURT: If you do not know that you were in contempt or did not, that is not my fault. You were in contempt. Bring the jury Back.

(The jury returned to the courtroom at 3:35 P.M.)

Mack Robinson, resumed:

THE COURT: Gentlemen?

MR. SAGEL: Before I begin, Your Honor, may I see Your Honor at sidebar?

THE COURT: Yes.

with the court. Thereafter, the court excused the jury for the remainder of the day. The trial resumed the next day.

At the outset, it must be made clear that our concern here is not whether the conduct of the attorney justified the adjudication of contempt. We are called upon to determine whether the impact of this incident was prejudicial to appellant's case; and if so, was he denied, as a result, a fair trial. The jury in this case witnessed the attorney for appellant being admonished by the court and being ordered into the custody of the sheriff. The significance of this incident is highlighted because of the unique position the trial judge holds.

> Regardless of who was at fault, any display of partiality or prejudice on the part of the trial judge, for or against a party, or an attorney must necessarily tend to influence the jury. The trial judge is the person to whom the jurors look for guidance and in whom they expect and have a right to find an impartial attitude. Any indication that the judge condemns the language or conduct of one of the parties or his counsel is usually reflected in the jury box. Our Constitution gives to anyone charged with violation of the law, the right to be heard by himself and counsel. While attorneys are expected to maintain a respectful attitude towards the court, the latter should be equally careful to treat counsel with proper courtesy and avoid every appearance of prejudice which might incline to influence the jury.

*Commonwealth v. Stallone*, 281 Pa. 41, 43–44, 126 A.2d 56, 57 (1924).

In this case, we are provided with circumstances that do more than merely give rise to an inference of partiality of the trial judge against defense counsel. To laypersons, inexperienced in the operation of trial procedures, the event in question was undoubtedly a memorable one. It was a situation likely to leave an indelible impression upon the viewers. The severity of the court's responses would suggest to the uninitiated that counsel's conduct represented a grave departure from the conduct expected of one in his

342

position. There was a reasonable probability the incident may have distracted the jury from an objective appraisal of those legitimate issues presented on the question of guilt or innocence.

Discord between the trial court and defense counsel is also likely to affect the client's cause. The client's position may be deemed less worthy in the eyes of the jury, by their translating the court's displeasure as an indication of the lack of substance in the client's cause. The fact that counsel is perceived. by the jury as having engaged in some serious misbehavior may suggest to the jury that he was forced to resort to such behavior because of the hopelessness of his client's case. The lack of respect for counsel, which may well have been engendered, would necessarily diminish his effectiveness as a persuasive advocate of his client's positions.

■ Where a prejudicial incident occurs during a trial which reflects unfavorably upon the defendant, it then must be determined whether it is of such manner or substance as may reasonably be said to have deprived the defendant of a fair and impartial verdict. *See Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973); *Commonwealth v. Phillips*, 183 Pa.Super. 377, 132 A.2d 733 (1957).

It must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable in every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate the otherwise fair trial.

*Commonwealth v. Phillips, supra* 183 Pa.Super. at 382, 132 A.2d at 736 (1957).

This highly provocative event can obviously not be dismissed as being of no significance. Even if counsel's conduct is viewed as justifying the court's action, his client does not deserve to suffer. Since we cannot say that this event did not unfavorably affect appellant's cause and improperly

influence an adverse decision in this case, we are constrained to hold that the judgments of sentence must be reversed and a new trial awarded.

It is so ordered.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent; a judge's proper efforts to maintain order in the courtroom cannot be a basis for awarding a new trial. I would therefore affirm the judgment of sentence.