446 A.2d 311

**COMMONWEALTH of Pennsylvania**

**v.**

**John Daniel REED, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed May 28, 1982.

Benjamin S. Blakley, III, Clearfield, for appellant.

F. Cortez Bell, III, Assistant District Attorney, Clearfield, for Commonwealth, appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, John Reed, was charged with theft by unlawful taking, burglary, and receiving stolen property. After a jury trial, appellant was convicted of burglary. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of not less than three nor more than seven years. He also was ordered to pay the costs of prosecution and to make restitution to the victim. This appeal followed.

In this appeal, appellant contends that a mistrial should have been granted when the prosecutor informed a witness in the presence of the jury, after having advised the witness of his constitutional right to remain silent, that no charges would be brought against the witness. We agree and reverse the judgment of sentence and grant appellant a new trial for the reasons herein stated.

The facts are these:

The testimony of Dennis Hughes was essential to the prosecution's case. This witness implicated appellant and a co-defendant, Ron Orley, in securing and delivering a stove and refrigerator which eventually were sold to Mr. Hughes and which were stolen from a vacation home. Apparently, Dennis Hughes had testified at the preliminary hearing, and, according to appellant's attorney, the witness had made incriminating statements which would tend to show that Dennis Hughes knew beforehand that the stove and refrigerator were stolen. The prosecutor disagreed with the attorney's characterization of the witness's testimony. The record sets forth the scenario of the trial in the following manner:

"MR. SEAMAN [The Prosecution]: Your Honor, the Commonwealth would call Mr. Dennis Hughes.

DENNIS JAMES HUGHES, having been duly sworn, was examined and testified as follows:

MR. LEES: Your Honor—

THE COURT: Will you pull the microphone in, please?

MR. LEES [Defense Counsel]: At this time we would request that this witness be instructed of his constitutional rights to remain silent. Contrary to the District Attorney's statement to the jury, there were incriminating statements made by this individual during the Preliminary Hearing in regards to the items in question.

THE COURT: Very well. Mr. Hughes, are you—

MR. SEAMAN: Your Honor, I'd just like to clarify something. The statement by Mr. Lees that the statements made by this witness at the Preliminary Hearing were incriminating, I believe it's a determination by Mr. Lees himself that they were incriminating; and it depends upon whose ears the statements fall whether or not they're incriminating.

THE COURT: Mr. Hughes, are you represented by Counsel?

THE WITNESS: No, sir.

THE COURT: Do you understand that there is at least a suggestion that your testimony may lead to incriminating statements by you?

THE WITNESS: I don't really understand it.

THE COURT: Mr. Seaman, will you proceed to explain to the witness.

MR. SEAMAN: Mr. Hughes, you will be giving testimony about this case about your receipt and your receiving of the refrigerator and stove in question.

THE WITNESS: M-hm.

MR. SEAMAN: And at least Mr. Lees seems to feel that perhaps some of the statements that you might make in regards to this would incriminate you, would tend to show that you perhaps had some knowledge that they were stolen, do you understand that?

THE WITNESS: Yes.

MR. SEAMAN: And the Judge has the duty to instruct you, then, that you have a right to remain silent, that you do not have to make any statements which might incriminate you, do you understand that?

THE WITNESS: Yes.

MR. SEAMAN: Do you desire to go through with this and to testify?

THE WITNESS: Yes, I do.

MR. SEAMAN: And you do not have any representation, do you, any Counsel?

THE WITNESS: No, I don't.

MR. SEAMAN: Do you have any desire that you be represented by anybody?

THE WITNESS: I don't understand whether or not I need representing.

MR. SEAMAN: Well, that's—I can't tell you that. That's up to you. If you believe that you need an attorney to represent you, to advise you what to say or not to say, then that's your choice. Do you have any reservations about testifying?

THE WITNESS: No, I don't.

MR. SEAMAN: Your Honor?

THE COURT: May I have Counsel?

(Whereupon, a brief discussion was held at sidebar off the record.)

MR. SEAMAN: Mr. Hughes, in the event that you should have any reservation about testifying, which you already stated you don't, I can advise you at this time that based upon the investigation made by the police officers involved in this case and the investigation made by the District Attorney's Office, that no charges would be brought against you as a result of your testimony today.

THE WITNESS: (Nods head in the affirmative.)

MR. LEES: At this point I object, Your Honor, and move for Mistrial. The District Attorney stated an opinion based on information he has received in the presence of the jury. I move that Mistrial be granted at this time.

THE COURT: It is denied. Proceed, please.

(Trial Transcript at 21–24).

The prosecution concedes that the "statement by the Commonwealth may have been improper." Brief for the Prosecution at 6. However, the prosecution argues that "regardless of whether there was a grant of immunity or not, the witness would have testified as he subsequently did." Brief for the Prosecution at 7. Even, however, if that were the case, the prosecutor's actions deprived appellant of a fair trial.

We have said that the role of the prosecutor in representing the "Commonwealth in a criminal proceeding is unlike an ordinary party to an adversary proceeding." *Lewis v. Court of Common Pleas of Lebanon County*, 436 Pa. 296, 300, 260 A.2d 184, 187 (1969). This deep rooted concept states that the

" 'district attorney, in his official capacity, exercises in a measure a judicial function . . . . [I]t is also incumbent on him to see that the Commonwealth's case is fully and *fairly* presented.' (Emphasis added.) *Commonwealth v. Meyers*, 290 Pa. 573, 580, 139 A. 374, 377 (1927)." *Com-*

*monwealth v. Myers*, 485 Pa. 519, 523, 403 A.2d 85, 86 (1979) (Emphasis added).

Thus, this Court has not approved of prosecutorial tactics which obstruct the "settled principle of law that the Commonwealth must *try* a case fairly.... " *Commonwealth v. Palermo*, 368 Pa. 28, 32, 81 A.2d 540, 542 (1951).

In order to assess the propriety of the prosecutor's conduct in the instant case, the standard to be applied in examining a promise of immunity to a crucial prosecution witness is whether "such promise or understanding [was] fully, fairly and honestly disclosed when it [came] into question at trial". *Commonwealth v. Kurtz*, 219 Pa.Super. 1, 4, 280 A.2d 410, 411 (1971) (citations omitted). Accord *Commonwealth v. Floyd*, 259 Pa.Super. 552, 559, 393 A.2d 963, 967 (1978); *Commonwealth v. Levenson*, 282 Pa.Super. 406, 422 A.2d 1355, 1359 (1980). The rationale for requiring a full, fair, and honest disclosure of a promise or understanding of immunity is because a promise or understanding of immunity would have a " 'significant bearing on the witness' motivation for testifying against appellant'.... " *Commonwealth v. Floyd*, 259 Pa.Super. at 558–559, 393 A.2d at 967 (citations omitted).

■ In the instant case, the prosecution did not fairly disclose the promise or understanding of immunity because, when the matter came into question at trial, he improperly vouched for the credibility of the prosecution's key witness.

It is well-settled that the prosecutor has a special obligation to avoid "improper suggestions, insinuations, and, especially, assertions of personal knowledge.... " *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Such conduct is prohibited because "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused *when they should properly carry none.*" Id. (Emphasis added).

■ Generally speaking, it is improper for the prosecution to *vouch* for the credibility of a government witness.

Vouching has been characterized in two categories: (1) when the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witness's testimony. See e.g., *United States v. Winter*, 663 F.2d 1120 (1st Cir. 1981); *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980), on remand, 640 F.2d 225 (1981), cert. denied, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).

The first type of vouching is more common and arises in situations where the jury is told either directly or indirectly of the prosecutor's opinion about the veracity of certain testimony which has been presented to the jury. See e.g., *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275, 277 (1974) (where "[i]n effect, the jury was told no one believed McDonald's [, a defense witness's,] testimony was true, not even appellant's counsel, and the natural conclusion the jury would draw from this was to disregard the testimony. Such conduct by a district attorney is improper and beyond the scope of fair play.") (footnote omitted); *Commonwealth v. Joyner*, 469 Pa. 333, 339, 365 A.2d 1233, 1236 (1976); See also ABA Standards, The Prosecution Function and Defense Function § 5.8.[1]

The second type of vouching (i.e., remarks that bolster a witnesses's credibility by referring to matters outside the record) "may occur more subtly and is also more susceptible to abuse". *United States v. Roberts*, 618 F.2d at 533. Accord *United States v. Garza*, 608 F.2d 659, 664 (5th Cir. 1979). In this connection, a federal circuit case, *United States v. Roberts*, supra, is instructive. In *Roberts*, a chief government witness testified under a plea agreement which

---

1. The ABA standards condemns such conduct:
   "5.8 Argument to the jury.
   (a) The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
   (b) It is unprofessional conduct for the prosecutor to express his personal *belief or opinion as to the truth or falsity of any testimony or evidence* or the guilt of the defendant...."

was entered into before the trial. This agreement provided that the witness would lose the benefits under the agreement should the witness testify untruthfully. The agreement was introduced into evidence and also was referred to extensively by the prosecutor in closing argument. The jury was informed during the trial that the critical issue was whether the government's witness or the defendant was telling the truth, that appellant could be expected to lie in order to save himself, and that the government's witness would not lie because he feared that a state police officer would be monitoring his testimony. The Ninth Circuit Court of Appeals held that the prosecutor committed reversible error by using the *detective's presence* to argue for the witness's credibility. Id. at 532. The *Roberts* court said that the prosecutor's remarks were fatal because "the remarks, fairly construed, were based on the *District Attorney's personal knowledge apart* from the evidence in the case and that the jury might have so understood them. *Orebo v. United States*, 293 F.2d 747, 749 (9th Cir. 1961) [, cert. denied 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962) ]." Id. at 533–534. (Emphasis added). The principle enunciated in the *Roberts* case also is applicable here.

In the instant case, the prosecutor explained in detail that "based upon the investigation made by the police officers involved in this case and the investigation made by the District Attorney's Office, I can advise you at this time . . . that no charges would be brought against [Dennis Hughes, the chief government witness,] as a result of [his] testimony today." N.T. at 24. In effect, the prosecution's remarks insinuated that the credibility of the witness had been checked by an investigation which had been conducted by the police officers involved in the case and by the District Attorney's office after the preliminary hearing. Thus, these detailed remarks were improper since they "were based on the [prosecutor's] personal knowledge" of facts which were not of record. *United States v. Roberts*, 619 F.2d at 533. As a result, the jury's attention was diverted away from the issues at hand and toward collateral matters. In a subtle

way, the prosecutor's reference bolstered the witness's credibility by implying that other evidence which was not of record could verify Hughes' role in the criminal episode at trial. Thus, the statement impinged on the jury's function of determining the guilt or innocence of the appellant based on the evidence produced.

The ABA Standards criticizes the tactics used by the prosecutor:

"5.9    Facts outside the record.

It is unprofessional conduct for the prosecutor *intentionally to refer to* or argue on the basis of facts *outside the record* whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."  (emphasis added.)

Likewise, we cannot condone the prosecution's reference which was "on the basis of facts outside the record".  Id.

Additionally, other factors have weighed in the balance of our decision today. They are: (1) the prosecution's case against appellant depended heavily upon the credibility of the government witness, Dennis Hughes; and, (2) the trial was conducted before a jury.

First of all, according to the prosecution's version of the facts, appellant and his co-defendant, Ron Orley, were involved in securing a stolen refrigerator and stove for Dennis Hughes from a vacation home in Clearfield County. The government witness testified that he did not know that the items were stolen; rather, he thought that they had belonged to appellant and his wife, who had "broken up". N.T. 29. It was only until after the items were delivered, and after a police officer had approached Hughes about the appliances that the witness had any idea that the stove or refrigerator "could have been stolen". N.T. 45. On the other hand, both the appellant and his co-defendant, Ron Orley, contended that they were innocent bystanders. Appellant, in an oral statement to the police, and his co-defendant also stated that either Hughes or a contracting associate had informed them where to pick up the stove and the

refrigerator. There were no fingerprints linking appellant or his co-defendant to the scene of the crime. However, two checks totalling $175.00, issued by Dennis Hughes and made payable to Ron Orley, the co-defendant, were introduced into evidence at trial. In view of this evidence, it is not surprising that the case depended heavily upon the credibility of Dennis Hughes. See *Berger v. United States*, supra (where the case depended upon the testimony of one witness).

■ We also note that the problem of digression from the issues at hand is "particularly offensive in a jury trial." ABA Standards, the Prosecution Function and Defense Function § 5.9, Commentary at 130. On this subject, our Supreme Court has said the following:

"It must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable in every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate the otherwise fair trial. *Commonwealth v. Phillips*, [183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957)]." *Commonwealth v. Davis*, 497 Pa. 335, 342, 440 A.2d 1185, 1188 (1981).

The prosecution contends that "the granting of immunity to the witness in the presence of the jury had no effect whatsoever. It did not influence the witness in his decision to testify as that decision had already been made. Likewise it did not influence the jury with respect to their opinion of the witness' testimony. If the grant of immunity *had any impact* at all on the jury, such would have been to make *them more suspicious* of what the witness said."[2] Brief for

2. The prosecution also concedes that it "did not have the power to grant immunity." Brief for the Prosecution; see *Commonwealth v. Strickler*, 481 Pa. 579, 393 A.2d 313 (1978). However, we need not address whether the prosecution had the authority to confer a grant of immunity in the presence of the jury because the conduct by the

234

the Prosecution at 7. (Emphasis added). We are unable to agree with the prosecution since the prosecution's remark gave bolstering details about a key prosecution witness who, after an investigation by the police and the District Attorney's office, had the support of the prosecuting authorities. Thus, we cannot conclude on these facts that the prosecution's conduct "had no substantial influence in the case." *Commonwealth v. Davis*, 497 Pa. at 342, 440 A.2d at 1188.

Judgment of sentence is reversed, and appellant is granted a new trial.

JOHNSON, J., concurs in the result.

prosecutor was improper under the circumstances. See 42 Pa.C.S. § 5947 and *United States v. Roberts*, supra.