J-S93030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MALIK MUHAMMAD | |
| Appellant | No. 1157 EDA 2015 |

Appeal from the Judgment of Sentence dated March 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007944-2010
CP-51-CR-0007945-2010
CP-51-CR-0007946-2010

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED MARCH 31, 2017**

Appellant, Malik Muhammad, appeals from the judgment of sentence following a jury trial and convictions for second-degree murder, robbery, aggravated assault, conspiracy, possession of an instrument of crime, and multiple violations of the Uniform Firearms Act.[1] Appellant challenges, among other things, the sufficiency and weight of the evidence, whether he was entitled to confront the witness who conducted the victim's autopsy, and whether his colloquy waiving his right to testify was premature. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(b), 3701(a)(1)(i), 2702(a), 903, 907, 6105, 6106, and 6108.

We adopt the facts and procedural history set forth in the trial court's opinion. *See* Trial Ct. Op., 2/10/16, at 1-6. We add that at the sentencing hearing, Appellant did not challenge the weight of the evidence. Appellant timely appealed, and the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. The court granted several extensions of time, and Appellant ultimately served the court with a Rule 1925(b) statement.[2]

Appellant raises the following issues:

> Whether the weight of the evidence is against Appellant's convictions stemming from the incidents of December 27, 2008, where the two surviving victims, and several other eyewitnesses failed to identify Appellant at trial as the perpetrator. Moreover the sole witness placing Appellant at the scene gave a self-serving statement shifting blame on Appellant by testifying Appellant was responsible for planning and perpetrating the crime.
>
> Whether the evidence is insufficient for Appellant's convictions stemming from the incidents of December 27, 2008, where the overwhelming eyewitness testimony fails to identify Appellant as the shooter and eye witness was

---

[2] Due to an apparent breakdown in the trial court's operations, Appellant's Rule 1925(b) statement for the above-captioned matter was never docketed or made a part of the certified record. Both the record and the docket for this case reflect, however, a filed 1925(b) statement, which has Docket No. 5336-2010 in the caption. That case at Docket No. 5336-2010 also involves Appellant but is completely unrelated to the instant case. In any event, the trial court filed a responsive Pa.R.A.P. 1925(a) opinion, which stated that Appellant filed a requested Rule 1925(b) statement. Under these unique circumstances, we decline to find Appellant waived his issues because it is apparent that Appellant's counsel, at a minimum, served the trial court with a Rule 1925(b) statement. *Cf.* Pa.R.A.P. 1925(c)(3) ("If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge.").

the co-defendant who gave self-serving testimony pointing the finger at Appellant to conjure favorable treatment from the Commonwealth.

Whether Appellant's Sixth Amendment Confrontation Clause rights were violated when the Commonwealth presented the testimony of Dr. Gulino who did not perform the autopsy nor write the autopsy report curtailing Appellant's right to confront witnesses as he could not cross examine the authors or Medical examiner who conducted the autopsy.

Whether there was Prosecutorial Misconduct when the Commonwealth bolstered the testimony of one of its witnesses, Detective Robert Fetters, when he testified he was authorized by the District Attorney's office to secure warrants for Appellant thus creating improper credibility to the Detective and the investigatory work conducted.

Whether the trial court gave improper jury instruction on the charge of second degree murder when it instead gave an in depth discussion on Serious Bodily Injury similar to jury instructions on Aggravated Assault that could have led [the] jury to be confused as the actual charges.

Appellant's Brief at 5-6 (some issues reordered to facilitate disposition).

The standard of review for a challenge to the sufficiency of the evidence follows:

When reviewing a sufficiency of the evidence claim, this Court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and we must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt.

*Commonwealth v. Goins*, 867 A.2d 526, 527 (Pa. Super. 2004). A challenge to the weight of the evidence must be properly preserved:

- 3 -

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Similarly, a defendant cannot raise an issue for the first time on appeal—it must be preserved with a timely and specific objection before the trial court. **Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008), **cert. denied**, 558 U.S. 821 (2009); **Commonwealth v. Piper**, 328 A.2d 845, 847 (Pa. 1974).

We briefly summarize the arguments for all of Appellant's issues. Appellant broadly challenges the sufficiency of evidence for all of his convictions. He contends that there was no eyewitness other than his co-conspirator (who identified him as the perpetrator), and there was no physical evidence linking him to the crimes. With respect to his weight claim, Appellant claims that his co-conspirator was motivated to testify against him because of an agreement with the Commonwealth. He asserts that the Commonwealth presented several witnesses who could not identify him as the shooter. Appellant claims that he had the right to confront and examine the doctor that performed the autopsy of the victim. He insists that this confrontation issue was preserved because he first raised it in his Rule 1925(b) statement. Appellant maintains that the court prematurely held a

colloquy regarding his right to testify. He asserts that the Commonwealth improperly bolstered a witness's credibility. Lastly, Appellant argues that the trial court improperly instructed the jury on aggravated assault instead of second-degree homicide. We conclude Appellant is not entitled to relief on any of these issues.

After careful review of the record,[3] the parties' briefs, and the decision of the Honorable Jeffrey P. Mineheart, we affirm on the basis of the trial court's opinion, except as discussed below. *See* Trial Ct. Op. at 6-17 (holding (1) Appellant waived his sufficiency claim by failing to identify the specific element of the particular crime he was challenging; (2) regardless, the evidence was sufficient for all of his convictions;[4] and (3) Appellant waived his remaining claims, including his weight claim,[5] by failing to

---

[3] The certified record is missing the September 19, 2012 transcript of the trial. Appellant, however, included the relevant part of the September 19th trial transcript as part of the reproduced record. "While this Court generally may only consider facts that have been duly certified in the record, . . . , where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." *Commonwealth v. Barnett*, 121 A.3d 534, 545 n.3 (Pa. Super.) (citations omitted), *appeal denied*, 128 A.3d 1204 (Pa. 2015), *cert. denied*, 136 S. Ct. 2391 (2016).

[4] With respect to Appellant's conviction for carrying a firearm without a license, the trial court noted that the Commonwealth failed to present evidence that Appellant did not have a license, but reasoned that because Appellant was under the age of twenty-one, he could not have obtained a license anyway. Trial Ct. Op. at 11 n.5. The trial court overlooked that the parties stipulated that Appellant lacked a license. N.T. Trial, 9/20/12, at 49-50.

[5] We acknowledge the trial court cited *Commonwealth v. Jarowecki*, 923 A.2d 425 (Pa. Super. 2007), in addressing Appellant's weight claim. *See*

*(Footnote Continued Next Page)*

preserve the issue properly). A footnote in the trial court's opinion erroneously states that Appellant's robbery charge was dismissed prior to trial. Trial Ct. Op. at 6 n.4. The trial court, however, addressed the sufficiency-of-evidence challenge to Appellant's robbery conviction and appropriately disposed of that challenge. *Id.* at 9. Therefore, we do not adopt this footnote. We also reiterate that Appellant could not preserve his witness confrontation issue by raising it for the first time in his Rule 1925(b) statement. *See Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1287 (Pa. Super. 2004) (*en banc*). Accordingly, having discerned no error of law or abuse of discretion, we affirm the judgment of sentence below. The parties are instructed to attach a copy of the trial court's opinion of February 10, 2016, to all future filings that reference this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017

---

*(Footnote Continued)*

Trial Ct. Op. at 13. Our Supreme Court reversed this Court in that case on other grounds. *Commonwealth v. Jarowecki*, 985 A.2d 955, 969 (Pa. 2009). The reversal has no bearing on the correctness of the trial court's disposition.

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | COURT OF COMMON PLEAS |
| | : | OF PHILADELPHIA |
| | : | |
| VS. | : | CRIMINAL TRIAL DIVISION |
| | : | |
| | : | CP-51-CR-0007944-2010 |
| MALIK MUHAMMAD | : | CP-51-CR-0007945-2010 |
| | : | CP-51-CR-0007946-2010 |
| | : | |

**FILED**

**OPINION**

FEB 10 2016

**PROCEDURAL HISTORY**

Post Trial Unit

The above-named defendant was charged as of the above Bill and Term numbers with, *inter alia*, murder, generally, robbery, criminal conspiracy, carrying a firearm without a license, carrying a firearm on a public street, possessing an instrument of crime, generally, and two counts of aggravated assault. These charges stemmed from an incident that occurred on December 27, 2008, during which appellant and Jamil Jones committed a robbery together that culminated in the shooting death of Terrell Holliday and serious bodily injury to Naeer Witherspoon and Brandon Garland.

Defendant's trial commenced in September of 2012, before this Court and a jury. On September 24, 2012, the jury found defendant guilty of second-degree murder, robbery, criminal conspiracy, carrying a firearm without a license, carrying a firearm on a public street, possessing an instrument of crime, generally, and two counts of aggravated assault. Sentencing was deferred until March 18, 2015, on which date this Court imposed an aggregate sentence of life

1

imprisonment plus thirty-five to seventy years' incarceration. [1] Following the imposition of sentence, appellant filed a notice of appeal and a requested Pa.R.A.P. 1925(b) Statement.

## FACTUAL HISTORY

On December 27, 2008, at about 8:50 p.m., Philadelphia Police Officer Christopher Hearn and his partner were on routine patrol when they received a radio call directing them to 72nd and Ogontz Avenue to investigate reports of a person with a gun and a shooting. The officers immediately proceeded to that location where they observed two males, later identified as Terrell Holliday and Naeer Witherspoon, lying on the ground. Holliday had a gunshot wound to his head and was unresponsive. Witherspoon on the other hand, who also had been shot, was conscious so the officers placed him in their patrol car and drove him to a nearby hospital. Although Officer Hearn asked Witherspoon who had shot him, Witherspoon refused to identify his assailant. The bullet that struck Witherspoon hit his spine permanently paralyzing him.

Holliday was also transported to a hospital by emergency medical personnel where he was pronounced dead. An autopsy performed on his body revealed that he died as a result of a gunshot to his head. The manner of death was deemed to be homicide.

Police Officer Robert Jala and his partner were also dispatched to the scene. Upon arrival, the officers were advised that there was a third victim and that he was lying in front of 7220 21st Street. The officers immediately proceeded to that location where they encountered Brandon Garland, who was suffering from gunshot wounds. The officers immediately transported him to the same hospital the other two victims had been transported.

---

[1] The delay in sentencing resulted from negotiations between the Commonwealth and defendant involving an open case charging defendant with homicide. That matter was eventually tried by this Court in 2013 and appellant was convicted of first-degree murder and related offenses. See CP-51-CR-0005336-210.

2

An examination of the scene of the shooting resulted in the recovery of three fired cartridge cases. They were submitted to the Philadelphia Police Department's Firearms Examination Unit for testing. That testing revealed that they were each .40 caliber and that they had been fired from the same gun.

When the shooting occurred, Ms. Alisa Colbert was working at a pizzeria situated at the site of the shooting. She recalled that just prior thereto Garland and Witherspoon came into the store and Witherspoon ordered two slices of pizza. They both then left. After they left, Ms. Colbert noticed a white car parked outside that was blocking traffic so she exited the store and saw Holliday, who had a wound to his head, as well as Witherspoon, who also appeared to be injured.[2] Ms. Colbert told the manager of the pizzeria to call the police. Police arrived shortly thereafter but before they did so someone entered the white car and drove it away.

Ms. Rhena Richardson also worked at the pizzeria. On the night of the incident, she saw both Holliday and Witherspoon after they had been shot. She also saw a man associated with them drive the white Buick from the scene and was aware that Garland sold drugs.

Based on information received, police learned that the white car, a Buick Park Avenue, belonged to Witherspoon. It was later found parked outside of 7087 Forest Avenue in Philadelphia, which was approximately one block from Ogontz Avenue.

Brandon Garland testified that on the day of the incident, he was selling marijuana in the area of 72nd and Ogontz Avenue when two persons walked up to him, one of whom asked him for marijuana as the other person walked away. Garland told the person that he had none left after which he turned around and called to a confederate to obtain more marijuana. Garland then

---

[2] Police learned that the white car, a Buick Park Avenue, belonged to Witherspoon. It was located by them parked outside of 7087 Forest Avenue in Philadelphia, which was approximately one block from Ogontz Avenue.

3

turned back toward the person and saw that the person had a gun pointing at his face. Garland began backing up and turned to run and when he did so, he heard shots. The next thing he recalled was waking up in a hospital. Although Garland recalled many of the details of the incident, including observing the white Buick Park Avenue and Witherspoon and Holliday, both of whom who exited it, he said that he could not identify who the person was who had shot him or the other person with the shooter.

Naeer Witherspoon did not remember much about the incident. He did, however, recall hearing Jones' voice at the scene after being shot.

Following the incident herein, Philadelphia Police Detective Robert Fetters, who had been assigned to investigate the instant matter, was contacted by Jamil Jones, who on December 29, 2008, came to police headquarters and gave the detective a statement. In the statement Jones told police that a male who went by the name "Dog Man" was involved in the incident. Jones gave a second statement on January 2, 2009, wherein he gave more information about the incident. On January 16, 2009, Jones was interviewed a third time. Unlike the previous two occasions, police commenced the interview by giving Jones Miranda warnings because the investigation of the incident had caused police to believe that Jones was more involved in it than he had admitted. After waiving the rights covered by the Miranda warnings, Jones gave police a statement wherein he inculpated himself in the incident and identified defendant as his co-actor and the person who had shot the victims.

Although Jones had implicated himself in the crime, police let him go home because they wanted to obtain more information related to the shooting. That effort failed however because no

4

one, including the employees of the pizzeria and either shooting victims, were willing to identify a photograph of defendant as depicting the other person involved in the incident.

Police eventually obtained an arrest warrant for Jones and following his arrest, he decided to cooperate with authorities in exchange for a plea deal. On August 21, 2009, Jones and his attorney agreed to participate in a proffer session. Based on the proffer session, the Commonwealth agreed to permit Jones to enter a non-negotiated guilty plea to the charges of third-degree murder, criminal conspiracy, robbery, possessing instruments of crime, generally, and two counts of aggravated assault in exchange for his testimony. Jones entered that plea on December 21, 2009.

According to Jones, on the day of the incident, defendant, a long-time friend, asked him to go on a "mission," which Jones knew meant a robbery, in the West Oak Lane area of Philadelphia. Jones and defendant took a bus there where Jones decided that if he saw Brandon Garland, he was going to rob him. Shortly thereafter, Jones saw Garland on 72nd Street and walked up to him and asked him if he had any marijuana. Jones said he did not and he made a phone call.[3]

During this interaction, Garland espied defendant and asked Jones about defendant. Jones denied knowing defendant. Defendant then told Jones to stop playing at which time Jones pulled out a gun and told Garland that he was being robbed. Garland began backing away as he tried to talk Jones and defendant out of robbing him. As this was occurring, Terrell Holliday and Naeer Witherspoon drove up in a white Buick LeSabre and when they did, defendant, armed with a .40 caliber hand gun, shot Garland, Holliday, and Witherspoon. Both defendant and Jones then left

---

[3] It is noted that in his proffer Jones stated that Garland asked him how much marijuana he wanted and Jones stated that he said that he wanted it all.

5

the area and Jones told defendant that he had shot the wrong people because they were friends of his. Defendant said that he shot them because he did not know them.

Jones, who was armed with a .38 caliber revolver, denied firing his weapon during the incident. Defendant retrieved that gun from Jones the next day.

Following the incident, Jones told a friend and members of his family about the incident because he felt remorse about what occurred to his friends. They contacted his uncle, a homicide detective in the Philadelphia Police Department, and, after further discussion with his family, Jones turned himself in, which led to his giving police the statements referred to above.

Based on the information received from Jones, Detective Fedders obtained an arrest warrant for defendant on March 29, 2010. Defendant was arrested on March 31, 2010.

## DISCUSSION

In his 1925(b) statement, defendant first asserts that the evidence was insufficient to support the charges because the Commonwealth only presented the testimony of a single witness, namely Jamil Jones, to establish the elements of the crimes defendant was convicted of committing. Defendant further argues that the evidence was insufficient to support the charges because the evidence of guilt came from only two witnesses, whose testimony, defendant contends, failed to prove each element of the crimes defendant was convicted of committing beyond a reasonable doubt.[4] In essence, defendant is arguing that the testimony presented by the two witnesses was not credible and thus, incapable of supporting the verdict.

The Pennsylvania Supreme and Superior Courts have repeatedly held, sufficiency review does not include an assessment of the credibility of witness testimony or other evidence. Commonwealth v. Brown, 648 A.2d 1177, 1191 (Pa. 1994); Commonwealth v. Wilson, 825

---

[4] Defendant indicates that defendant was convicted of robbery. Defendant is mistaken because that charge was dismissed prior to the trial and was not one of the charges upon which a verdict was rendered.

6

A.2d 710, 713 (Pa. Super. 2003), and that testimonial conflicts will not render evidence insufficient. Commonwealth v. Hargrave, 745 A.2d 20, 22 (Pa. Super. 2000); Commonwealth v. Mechalski, 707 A.2d 528, 530 (Pa. Super. 1998). The courts have thus repeatedly rejected "sufficiency" arguments that are directed at the weight and credibility of the evidence. See *e.g.*, Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999) (rejecting argument that evidence supporting his murder conviction was insufficient due to inconsistencies between various witnesses' testimony because "[although appellant phrases this as a sufficiency argument, the challenge goes to the weight of the evidence"), cert. denied, 531 U.S. 829 (2000); Commonwealth v. Sullivan, 864 A.2d 1246, 1249-50 (Pa. Super. 2004) (finding credibility arguments inappropriate for sufficiency claim); Commonwealth v. Hodge, 658 A.2d 386, 389 (Pa. Super. 1995) ("Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth.") (internal quotations and citation omitted). Appellant's credibility-based sufficiency arguments are therefore unavailing especially because the uncorroborated testimony of single witness may alone be sufficient to convict a defendant. Commonwealth v. Kearney, 601 A.2d 346, 349 n.6 (Pa. Super. 1992).

Accordingly, because the jury, sitting as fact-finder, found the testimony presented by the Commonwealth credible, it is suggested that if this claim is deemed not to have been waived, the Honorable Court find that the evidence was sufficient to sustain the verdicts and grant no relief with respect to this claim.

The claim should also be deemed waived because defendant failed to articulate which elements of the crimes he was convicted of committing the Commonwealth failed to establish. "[W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's [Rule] 1925

7

statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa. Super. 2009), appeal denied, 3 A.3d 670 (Pa. 2010) (quoting Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008)). "Such specificity is of particular importance in cases here...the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Gibbs, supra (holding appellant waived challenge to sufficiency of evidence where appellant failed to specify in Rule 1925(b) statement which convictions, and which elements of those crimes, he was challenging on appeal; fact that trial court addressed appellant's sufficiency claim in its opinion was of no moment to waiver analysis).

In any event, if it is determined that defendant preserved his sufficiency challenge, it is suggested that no relief be accorded defendant because the evidence was sufficient to support the charges. A review of a sufficiency claim requires that the evidence presented by the Commonwealth be assessed to ascertain if it establishes each material element of the crime beyond a reasonable doubt. Commonwealth v. Pagan, 950 A.2d 270, 278 (Pa. 2008). The evidence and all reasonable inferences are viewed in the light most favorable to the Commonwealth as verdict winner. Commonwealth v. Watkins, 843 A.2d 1203, 1211 (Pa. 2003); Commonwealth v. Collins, 703 A.2d 418, 420 (Pa. 1997).

"A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa. C.S.A. §2502(b). "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit

8

robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa. C.S.A. §2502(d)(emphasis added).

"A person is guilty of robbery if, in the course Of committing a theft, he: (I) inflicts serious bodily injury upon another." 18 Pa. C.S. § 3701(a)(1)(i). Additionally, the robbery statute further provides that "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa. C.S.A. §3701 (a)(2). Therefore, a defendant can be convicted of robbery regardless of whether an actual theft occurs or not.

Here, the evidence, viewed in the light most favorable to the Commonwealth, overwhelmingly supports defendant's second-degree murder and robbery convictions. The evidence established that defendant and Jones travelled to the area where the incident occurred for the specific purpose of committing a robbery. They then identified their victim at which time Jones, appellant's accomplice announced a robbery. When the victim resisted, appellant shot him and the other two victims.

This evidence was more than sufficient to support the conviction. It is well-settled that "[a] defendant can be convicted on the positive identification of one witness." Commonwealth v. Saldutte, 7 A.2d 121, 123 (Pa. Super. 1939). See also Commonwealth v. King, 959 A.2d 405, 411 (Pa. Super. 2008) (identification testimony of eyewitnesses sufficient, without physical evidence, to support first-degree murder conviction). Besides, while no other witness specifically identified defendant as one of the perpetrators, Jones' testimony was corroborated by the other witnesses whose testimony about several details of the crime matched Jones' testimony.

The evidence was sufficient to support the other crimes as well. To sustain a conviction for criminal conspiracy, the evidence must establish that the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. Commonwealth v. Johnson, 719 A.2d 778, 785 (Pa. Super. 1998) (en banc) (citations omitted). Conspiracy can be established solely with circumstantial evidence, such as the interaction between the parties and the context of their actions. Commonwealth v. Bricker, 882 A.2d 1008, 1017 (Pa. Super. 2005) (citations omitted).

With regard to the crime of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1) provides, in relevant part, "[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Commonwealth v. Martuscelli, 54 A. 3d 940, 947-48 (Pa. Super. 2012). "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." Id. (citing Commonwealth v. Gruff, 822 A.2d 773, 76 (Pa. Super. 2003). "Serious bodily injury" is defined under 18 Pa. C.S.A. § 2301 as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The crime of Possessing an instrument of crime is set forth in 18 Pa.C.S. § 907 as follows:

> (a) Criminal instruments generally.--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

10

18 Pa.C.S. § 907.

It is the Commonwealth's burden to prove that the defendant possessed an object that is an instrument of crime with the intent to use the object for a criminal purpose. In the Interest of A.C., 763 A.2d 889, 890 (Pa. Super. 2000).

A person commits the crime of carrying a firearm without a license, 18 Pa. C.S. § 6106, if he or she carries a concealed firearm without a license. A person violates 18 Pa. C.S. § 6108, which defines the crime of carrying a firearm without a license if he or she carries a "firearm, rifle or shotgun at any time upon the public streets or upon any public property" in Philadelphia unless licensed to do so or exempt from the license requirement. For purposes of these sections, a "firearm" is "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa. C.S. § 6102.

Instantly, the evidence was clearly sufficient to support the remaining charges. First, through Jones, the Commonwealth established that defendant and Jones entered into a corrupt confederation the object of which was to commit a robbery. Jones' testimony was also sufficient to establish that defendant intentionally shot the other victims causing them to suffer serious bodily injury.

The evidence also established that defendant possessed a firearm with the intent to employ it criminally as he shot the three victims with it unjustifiably. Further, it established that defendant possessed a firearm while not eligible to be licensed to do so and that he carried a firearm on a public street in Philadelphia.[5] Therefore, the evidence was sufficient to support the

---

[5] While it appears that the Commonwealth failed to present evidence of non-licensure, defendant was under the age of twenty-one when he committed the crime and was ineligible to obtain a firearms license. In the event the

11

charges and it is suggested that defendant's claim with respect to this issue be denied in the event that it is not deemed to have been waived.

In his second claim defendant argues that the verdict is against the weight of the evidence because it rests upon the testimony of a single witness and because other witnesses failed to identify defendant in court or during photographic identification sessions. Said claim should be deemed waived because it was not raised before this Court either orally or in a post-sentence motion. In order to preserve a weight of the evidence claim for appellate review said claim must be presented to the trial court or else it is waived.

> Regarding Appellant's weight of the evidence claim we note that Appellant did not make a motion raising a weight of the evidence claim before the trial court as the Pennsylvania Rules of Criminal Procedure require. See Pa.R.Crim.P. 607(A).22 The fact that Appellant included an issue challenging the verdict on weight of the evidence grounds in his 1925(b) statement and the trial court addressed Appellant's weight claim in its Pa.R.A.P 1925(a) opinion did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion. Pa.R.Crim.P. 607(A); Steiner v. Markel, 600 Pa. 515, 968 A.2d 1253, 1257 (2009) (holding that inclusion of an issue in a 1925(b) statement that has not been previously preserved does not entitle litigant to appellate review of the unpreserved claim); Mack, 850 A.2d at 694 (holding weight claim waived by noncompliance with Pa.R.Crim.P. 607, even if the trial court addresses it on the merits); Commonwealth v. Burkett, 830 A.2d 1034, 1037 (Pa.Super.2003) (same). See also Commonwealth v. Little, 879 A.2d 293, 300–301 (Pa.Super.2005), appeal denied, 586 Pa. 724, 890 A.2d 1057 (2005); Commonwealth v. Washington, 825 A.2d 1264, 1265 (Pa.Super.2003). Appellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial. Because "appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence," Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 753 (2000), this Court has nothing to review on appeal. We thus hold

---

Honorable Court determines that the evidence was insufficient to support the charge of carrying a firearm without a license a remand would be unnecessary because a verdict without further penalty was entered on that charge.

12

> that Appellant waived his weight of the evidence claim because it was not raised before the trial court as required by Pa.R.Crim.P. 607.

Commonwealth v. Sherwood, 982 A.2d 483, 494 (Pa. 2009).

In accordance with the holding of Sherwood, it is respectfully suggested that defendant's weight claim be deemed waived.

In the event that the claim is considered not to have been waived, it is suggested that it be denied. The standard in reviewing a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); see also Commonwealth v. Sanchez, 36 .3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be give n another opportunity to prevail." (citation omitted)).

The initial determination regarding the weight of the evidence is for the fact-finder. Commonwealth v. Jarowecki, 923 A.2d 425, 433 (Pa. Super. 2007). The trier of fact is free to believe all, some or none of the evidence. Id. A reviewing court is not permitted to substitute its judgment for that of the fact-finder. Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999). When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, appellate review of a trial court's decision is extremely limited. Unless the evidence is

13

so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, weight of evidence claims shall be rejected. Commonwealth v. Rossetti, 863 A.2d 1185, 1191 (Pa. Super. 2004).

Here, applying the above standards to the instant matter, it is clear that the verdict does not shock the conscience because the jury's verdict does not shock the conscience. Defendant attack on the weight of the evidence rests primarily on a claim that Jones' testimony was not sufficient by itself to sustain the convictions given the lack of corroborating identification evidence.

Assessing the credibility of a witness and according that testimony appropriate weight is within the province of the trier of fact, here the trial judge. 523 A.2d 1140 (Pa. Super. 1987), alloc. denied 5533 A.2d 712 (Pa. 1987). The fact that the jury found Jones credible is unassailable especially given that Jones' testimony was corroborated by the other evidence presented in the case. Moreover, simply because other witnesses failed to identify defendant as the person who robbed and shot the victims does not render the verdict against the weight of the evidence given Jones' credible first person account of the incident. Accordingly, it is suggested that if the instant claim is not deemed waived, defendant not be granted relief thereon for the reasons stated.

In his third claim, defendant asserts that his constitutional right to confront witnesses against him was violated because the medical examiner who testified at trial did not conduct the autopsy upon the victim or co-sign the autopsy report after it was completed. (N.T. 9/19/12, 114-127). Fourth, defendant contends that this Court committed error because it conducted a colloquy of defendant regarding whether he was going to testify in his own defense before the Commonwealth rested its case. (N.T. 9/20/12, 3-5). Next, defendant claims that the

14

Commonwealth engaged in impermissible vouching of the testimony given by its witnesses when it elicited from Detective Robert Fetters that the Chief of the Philadelphia District Attorney's Office authorized and directed him to obtain an arrest warrant for defendant. (N.T. 9/20/12, 14-16, 18-20). Finally, defendant argues that the Court "recited the elements of aggravated assault and told the jury that those elements were for the crime of second degree murder, that being the same crime for which Defendant was convicted. Defendant's 19125(b) statement, Issue 6.

It is suggested that each of these claims should be deemed waived because no objections were made of record when the alleged errors occurred. The law is clear that issues not preserved in the lower court cannot be raised for the first time on appeal and are waived. Pa.R.A.P. 302(a); Commonwealth v. Duffy, 911 A.2d 147, 158 (Pa. Super. 2006) ("A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal.").

If they are deemed not to have been waived, it is clear that these claims warrant no relief and it is suggested that they be found lacking in merit. With respect to Issue 3, Dr. Gulino testified that he personally reviewed the case file regarding the homicide herein, which included autopsy report and autopsy photographs and case file, and that he had reached his own independent conclusions about the victim's cause of death. It has long been established that a medical examiner may give an independent opinion on cause and manner of death based on information of the kind such experts customarily rely on in the practice of their profession. *E.g.*, Commonwealth v. Vandivner, 962 A.2d 1170, 1178-1180 (Pa. 2009); Pa.R.E. 703. Here, because Dr. Gulino was available for cross-examination, gave independent testimony about the cause of the victim's death, and offered no testimony about defendant's involvement in the murder, his testimony did not violate defendant's right of confrontation.

15

With regard to defendant's fourth issue, this Court was unable to find any authority governing when a waiver colloquy must be conducted. Moreover, defendant cannot establish what prejudice inured to him by conducting the colloquy before the Commonwealth rested.

Defendant's fifth issue, had it not been waived, would not entitle him to relief. Improper vouching occurs "(1) when the prosecution places the prestige of the government behind the witness by personal assurances of the witness' veracity and (2) when the prosecution indicates that information which is not before the jury supports the witness' testimony." Commonwealth v. Reed, 446 A.2d 311, 314 (Pa. Super. 1982). The former type of vouching occurs when a prosecutor expresses her opinion as to a witness's credibility. Id. The latter occurs when a prosecutor indicates that there is information known to her, beyond that which is before the jury, which tends to verify a witness' credibility. Id.

Instantly, the testimony cited by defendant did not violate the rule against vouching. It is clear that the testimony was presented to demonstrate how and why authorities decided to arrest Jones and defendant. Nowhere in the testimony did the prosecution vouch for the credibility of one of its witnesses or present information about which the jury was unaware to bolster the credibility of any of its witnesses.

Finally, there was no error in the Court's jury charge. When evaluating the propriety of jury instructions, the charge must be read in its entirety. Commonwealth v. Paddy, 800 A.2d 294, 321 (Pa. 2002); Commonwealth v. Prosdocimo, 578 A.2d 1273, 1274 (Pa. 1990). Contrary to defendant's analysis, error may not be predicated on isolated excerpts of the charge; it is the general effect that controls. Commonwealth v. Williams, 732 A.2d 1167, 1187 (Pa. 1999); Commonwealth v. Mason, 518 A.2d 282, 291 (Pa. Super. 1986). "A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate

statement of law, there is no reversible error." Commonwealth v. Wesley, 753 A.2d 204, 210 (Pa. 2000). In fact, the trial court may use its own form of expression as long as the law is presented clearly, adequately, and accurately. Commonwealth v. Chambers, 807 A.2d 872, 882 (Pa. 2002).

Even a cursory review of the jury instruction complained of shows that there is no merit to the claim. The Court, in defining the crime of second degree murder simply defined the necessary elements of that crime, which included the crime of robbery, the underlying felony, theft and serious bodily injury. The instructions were not confusing, misleading or legally incorrect. Thus, no error occurred here.

Accordingly, if the Court should find that defendant did not waive review of his last four issues, it is suggested that they de found lacking in merit.

## CONCLUSION

For the foregoing reasons, the defendant's assertions of error should be dismissed for lack of merit and the judgment of sentence entered in this matter should be affirmed.

By the Court,

DATE: 2/10/16

Honorable Jeffrey P. Minehart

17